

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-8-2003

# DeAsencio v. Tyson Foods Inc

Precedential or Non-Precedential: Precedential

Docket No. 02-3719

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

## Recommended Citation

"DeAsencio v. Tyson Foods Inc" (2003). *2003 Decisions*. Paper 238.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/238

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 8, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3719

MELANIA FELIX DE ASENCIO;
MANUEL A. GUTIERREZ; ASELA RUIZ;
EUSEBIA RUIZ; LUIS A. VIGO; LUZ CORDOVA;
HECTOR PANTAJOS, ON BEHALF OF THEMSELVES
AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS

v.

TYSON FOODS, INC.,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 00-cv-04294
(Honorable Robert F. Kelly)

Argued April 24, 2003

Before: SCIRICA, *Chief Judge*,\* AMBRO and
GARTH, *Circuit Judges*

(Filed September 8, 2003)

---

\* Judge Scirica began his term as Chief Judge on May 4, 2003.

MICHAEL J. MUELLER, ESQUIRE
 (ARGUED)
Akin, Gump, Strauss, Hauer & Feld
1333 New Hampshire Avenue, N.W.
Suite 400
Washington, D.C. 20036

   Attorney for Appellant

FREDERICK P. SANTARELLI,
 ESQUIRE (ARGUED)
THOMAS J. ELLIOTT, ESQUIRE
ERIC L. YOUNG, ESQUIRE
Elliott, Reihner, Siedzikowski
 & Egan
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422

   Attorneys for Appellees

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

In a labor dispute over unpaid wages, plaintiffs gained certification of an opt-in class under the Fair Labor Standards Act and then sought certification of a Fed. R. Civ. P. 23(b)(3) opt-out class under the Pennsylvania Wage Payment & Collection Law. The District Court granted the Rule 23 certification. At issue is whether the District Court should have exercised supplemental jurisdiction over the state-law class under 28 U.S.C. § 1367.

### I.

### A.

Plaintiffs are hourly employees at defendant Tyson Foods' two chicken-processing plants in New Holland, Pennsylvania (Lancaster County). Plant One employees work on the production line slaughtering birds and producing meat for direct sale or further processing. Those

at Plant Two process the chicken meat, producing prepared, packed chicken products, like chicken nuggets, chicken tenders, chicken patties, and Buffalo wings.

Animal flesh, blood, and fecal matter are present throughout both plants. To protect against disease and safety hazards, Tyson employees are required to perform "donning, doffing, and sanitizing" activities. This entails putting on protective clothing—like hairnets, earplugs, safety goggles, cotton smocks, gloves, and plastic aprons—before the start of their shift, and rinsing their clothing and washing their hands at the end of their shift. Employees receive two unpaid 30-minute meal periods per shift, and must don, doff, and sanitize at the beginning and end of these breaks.[1]

Tyson ordinarily does not pay its employees for time spent donning and doffing.[2] The plaintiff employees are not organized nor do they work under a written contract. There is no collective bargaining.

## B.

In August 2000, plaintiffs filed suit against Tyson under both federal law (the Fair Labor Standards Act, 29 U.S.C. §§ 201-219) and state law (the Pennsylvania Wage Payment & Collection Law, 43 P.S. §§ 260.1-260.45) on behalf of themselves and similarly situated co-workers at Tyson's chicken processing complex.

On October 4, plaintiffs sought collective treatment of their FLSA action under the federal statute's opt-in provisions. 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is

---

1. Tyson cites significant differences among its hourly employees, contending they wear different clothing, resulting in time variations for donning and doffing. The parties agree there are at least four categories under which Tyson calculates employee working times, depending on the type of work and where they work on the production line.

2. Tyson pays for donning and doffing in two limited instances, which are not relevant here.

brought."). Plaintiffs did not seek class certification on the state-law WPCL action at that time.

On January 31, 2001, the District Court granted plaintiffs' request to issue notice to prospective class members under the FLSA action. The court's notice stated, in part, "The Court has not yet determined that the claims under the Pennsylvania WPCL can be pursued as a class action, and thus your right to participate in that claim will depend on a later decision by the Court."

On March 15, Tyson mailed out the notice to 3,400 prospective FLSA class members. On June 21, Tyson filed a motion to close the class period. At that time, 502 current and former employees—or 15 percent of the allegedly eligible class—had elected to join the FLSA action by filing written consent forms. Plaintiffs contested the motion to close, claiming that a substantial number of prospective plaintiffs never received notice and that Tyson improperly discouraged its current and former employees from participating in the action. The record showed that 783 putative FLSA class members never received notice of the opt-in action because Tyson mailed the notice to the wrong address.[3]

On July 24, the District Court closed the class period and denied plaintiffs' motion to reissue notice. The class consisted of 504 current and former employees. The District Court later dismissed, on summary judgment, the claims of 57 of those employees as barred by the statute of limitations. All parties acknowledge that the current size of the FLSA class is 447 persons.

On December 31, the District Court closed discovery. Nearly two months later, on February 22, 2002, plaintiffs filed a motion to certify the supplemental state-law WPCL action under Fed. R. Civ. P. 23. Plaintiffs' motion for class treatment under the supplemental state-law action was filed 17 months after their motion to certify the federal FLSA action. The District Court heard arguments on

---

3. Additional putative FLSA class members allegedly never received notice of the opt-in class because they had not been employed by Tyson at the time the notice was sent.

whether plaintiffs could bring a WPCL action because they had not pleaded a contract claim, the predicate for a WPCL action. On May 14, plaintiffs argued for the first time that the WPCL action was grounded in an implied contract between Tyson and its hourly employees.[4]

On July 17, despite Tyson's objections that the WPCL certification motion was late and that the implied contract argument was new, the District Court granted plaintiffs' motion to certify the state WPCL action under Fed. R. Civ. P. 23(b)(3).[5] The state-law class, an opt-out class, consisted of approximately 4,100 persons, including approximately 700 employees hired after notice was sent to the FLSA class.

The District Court had subject matter jurisdiction over plaintiffs' FLSA action under 28 U.S.C. § 1331 and exercised supplemental jurisdiction over plaintiffs' state-law action under 28 U.S.C. § 1367. Tyson disputes the District Court's exercise of supplemental jurisdiction. Tyson petitioned for leave to appeal the certification order under Fed. R. Civ. P. 23(f), which was granted. We have jurisdiction over the interlocutory appeal under 28 U.S.C. § 1292(e) and Fed. R. Civ. P. 23(f).

---

4. Tyson avers it has made no promise to pay its employees for donning and doffing time.

5. The Pennsylvania Wage Payment & Collection Law provides:

> Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain such action or on behalf of all employes similarly situated. Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.

43 P.S. § 260.9a(b).

**II.**

**A.**

In 1938, Congress enacted the Fair Labor Standards Act to govern the maintenance of standard hour and wage practices. The FLSA requires employers to pay their employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207. Employers who violate these provisions are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

The legislation propelled thousands of portal-to-portal lawsuits. The term "portal to portal" represents an employee's work day from starting time to quitting time. *Jewell Ridge Coal Corp. v. United Mine Workers*, 325 U.S. 161, 188 (1945) (Jackson, J., dissenting); *Connors v. Beth Energy Mines, Inc.*, 920 F.2d 205, 208 (3d Cir. 1990) (work day was eight hours from portal-to-portal including thirty minutes for lunch). Between July 1, 1946 and January 31, 1947, employees around the country filed 1,913 such actions under the FLSA. 93 Cong. Rec. 2,082 (1947).

The dramatic increase in these suits was a result of the Supreme Court's decision in *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946), which expanded the scope of compensable "working time" for FLSA purposes. *See* 93 Cong. Rec. 2,089 (1947) ("[W]hat is the cause of this widespread litigation? The immediate incident which apparently brought this vast flood of litigation upon our nation was the decision of the Supreme Court [in *Anderson*]."). Responding to this increase in litigation, Congress sought "to define and limit the jurisdiction of the courts" through the Portal-to-Portal Act, Pub. L. No. 80-49, ch. 52, § 1(b)(3), 61 Stat. 85 (1947). 93 Cong. Rec. 2,087 (1947) ("[T]he attention of the Senate is called to a dramatic influx of litigation, involving vast alleged liability, which has suddenly entered the Federal courts of the Nation."). Noting

the "immensity of the [litigation] problem," *id.* at 2,082, Congress attempted to strike a balance to maintain employees' rights but curb the number of lawsuits. Under the Portal-to-Portal Act, an FLSA action for overtime pay could be maintained by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). But the statute contained an express opt-in provision: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

Because the Portal-to-Portal Act amendment changed participation in an FLSA class from "opt-out" to "opt-in," FLSA plaintiffs could not certify a class under Fed. R. Civ. P. 23, even though federal subject matter jurisdiction obtained. *E.g.*, *Lusardi v. Lechner*, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988) ("Courts have generally recognized that Rule 23 class actions may not be used under FLSA § 16(b)."); 5 James Wm. Moore et al., Moore's Federal Practice § 23.06[1] (3d ed. 2003) ("Rule 23 is inapplicable to class proceedings under the FLSA."). The principal difference between FLSA class actions and Fed. R. Civ. P. 23 class actions is that prospective plaintiffs under the FLSA must consent to join the class.

As noted, plaintiffs here obtained federal court jurisdiction when they filed a FLSA action, alleging that Tyson was liable to pay its employees for time spent donning and doffing. The District Court ordered notice to prospective class members and later certified a class of 504 persons who consented in writing to become party plaintiffs.[6] The certification of this class is not problematic. But Tyson contends plaintiffs obtained federal jurisdiction, then used their supplemental state-law WPCL action and Fed. R. Civ. P. 23's opt-out provisions as an end run around the Portal-

---

6. As noted, the current number of eligible plaintiffs in the FLSA class is 447.

to-Portal Act's clear congressional mandate in favor of collective opt-in actions.[7]

**B.**

At issue is whether the District Court properly exercised supplemental jurisdiction over the state-law WPCL opt-out action.

In 1990, Congress broadened district courts' ability to exercise supplemental jurisdiction over non-federal claims. 28 U.S.C. § 1367.[8] The statute explicitly provided for

---

7. Plaintiffs argue Congress did not intend the Portal-to-Portal Act amendments to affect state-law actions. They cite legislative history that "[a]ctions under the common law, or under State statutes for recovery of wages are not affected" by the Act. H.R. Rep. No. 71 (1947), *reprinted in* 1947 U.S.C.C.A.N. 1029, 1035. But plaintiffs' reference to the legislative history is misplaced. The cited statement pertained directly to the Act's imposition of a one-year statute of limitations on FLSA actions. *See Univs. Research Ass'n v. Coutu*, 450 U.S. 754, 781 n.34 (1981) ("Senator McGrath's statement strongly suggests that the limitations period of the Portal-to-Portal Act was designed to apply to the explicit statutory remedy set forth in the Davis-Bacon Act."). It did not coincide with the Act's provision that requires parties' consent to a collective action.

8. 28 U.S.C. § 1367(a-c) provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

supplemental jurisdiction for "claims that involve the joinder or intervention of additional parties." *Id.*[9] Supplemental jurisdiction was not available where "expressly provided otherwise by Federal statute" or under one of the statute's enumerated exceptions. *Id.*

Section 1367 combined older notions of pendent jurisdiction and ancillary jurisdiction. Under the statute, which codified many of the principles enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), a district court may exercise supplemental jurisdiction where state-law claims share a "common nucleus of operative fact" with the claims that supported the district court's original jurisdiction. *Id.*; *see also* 28 U.S.C. § 1367(a); *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 303 (3d Cir. 1998) (Section 1367 "does not permit courts to take jurisdiction over tangentially related claims. The issue is whether there is a 'common nucleus of operative fact' and whether the claims are part of the 'same case or controversy under Article III.' "). Supplemental jurisdiction promotes "judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726.

Under section 1367, a district court has authority to exercise supplemental jurisdiction over non-federal claims

---

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

  (1) the claim raises a novel or complex issue of State law,

  (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

  (3) the district court has dismissed all claims over which it has original jurisdiction, or

  (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

9. Moreover, the Federal Rules of Civil Procedure permit joinder where parties asserted "any right to relief . . . and if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20(a).

arising from the same case or controversy as the federal claim. Here, the District Court determined the FLSA and WPCL actions arose from the same controversy and shared a common nucleus of operative fact. This ruling was not an abuse of discretion. Where "the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious." *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995). The FLSA and WPCL are parallel federal and state laws and the independent actions both address whether Tyson's employees should be paid for donning and doffing time, sufficiently demonstrating a common nucleus of operative fact.

Still, section 1367 provides specific exceptions to supplemental jurisdiction. There is no supplemental jurisdiction where a federal statute expressly provides otherwise, either through direct preclusion or preemption of state-law claims.[10] 28 U.S.C. § 1367(a).[11] There are also explicit circumstances under which a district court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c). At issue is whether this case involves one of those circumstances.

A district court has the responsibility to manage complex litigation. That responsibility requires a court to determine

---

10. In certain federal statutes, Congress has expressly provided for the preemption of state-law claims. *E.g.*, Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1). But Congress did not do so here.

11. Moreover, although not relevant here, federal courts do not have subject-matter jurisdiction over certain pendent state-law claims where original jurisdiction is based on diversity rather than a federal question:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).

whether to exercise supplemental jurisdiction over pendent claims and parties. In enacting section 1367, Congress intended to enhance a district court's ability to gain jurisdiction over pendent claims and parties while providing those courts with the discretion to decline to exercise supplemental jurisdiction in several express circumstances. "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726.

Because the FLSA does not expressly address supplemental jurisdiction, we consider the explicit statutory circumstances enunciated in section 1367(c) under which a district court may decline to exercise supplemental jurisdiction. In codifying much of *Gibbs*, Congress granted district court judges discretion to determine whether to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c); *see also New Rock Asset Partners v. Preferred Equity Advancements, Inc.*, 101 F.3d 1492, 1507 n.11 (3d Cir. 1996) (discretion in district court judges helps promote the economical resolution of cases). District courts may decline to exercise supplemental jurisdiction where:

> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1-4).[12]

---

12. Subsection (3) is not relevant here since the District Court has not dismissed the FLSA action. We do not reach subsection (4), although it may be relevant. Congress provided that a District Court may decline to exercise supplemental jurisdiction where "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

The dispositive provision here appears to focus on whether the state-law action substantially predominates over the FLSA action. Where "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726. Generally, a district court will find substantial predomination "where 'a state claim constitutes the real body of a case, to which the federal claim is only an appendage'—only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (citation omitted) (quoting *Gibbs*, 383 U.S. at 727).

Our inquiry here centers on the terms of proof and the scope of the issues raised in the FLSA and WPCL actions.[13] As we have held, the WPCL " 'does not create a right to compensation . . . . [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.' " *Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996) (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990)). Because Tyson's employees do not work under an employment contract or a collective bargaining agreement, plaintiffs will have to establish the formation of an implied oral contract between Tyson and its employees. Even then, whether an implied contract may give rise to a claim under the WPCL has never been addressed by the Pennsylvania state courts and will require additional testimony and proof to substantiate beyond that required for the FLSA action.[14]

---

13. There are some differences in the comprehensiveness of the federal and state remedies as well since the FLSA remedy is only for overtime pay and the WPCL remedy is broader. And, as discussed *infra*, the WPCL claim may be dismissed without prejudice here and left for resolution to state tribunals. These factors further support a finding of substantial predomination by the WPCL claim under *Gibbs*, but our focus here is on the terms of proof and scope of the issues raised.

14. A federal court could have subject matter jurisdiction over two federal claims, one requiring opt-in and the other opt-out. For example,

Given the importance of the wage-protection legal scheme in Pennsylvania, the scope of the state issues may substantially predominate over the more straightforward federal scheme.

Another countervailing interest in relegating the WPCL claims here to state court is Congress's express preference for opt-in actions for the federal cause of action. Congress's interest in these matters is manifest. For policy reasons articulated in the legislative history, Congress chose to limit the scope of representative actions for overtime pay and minimum wage violations.

But the interest in joining these actions is strong as well. As noted, the actions share a common nucleus of operative fact and they arise from the same case or controversy. Moreover, joinder would permit the District Court to efficiently manage the overall litigation. Were supplemental jurisdiction not to obtain, and assuming the statute of limitations has not run, plaintiffs could file the WPCL action in state court and request an opt-out class on behalf of themselves and "other employes similarly situated." 43 P.S. § 260.9a(b).[15]

---

a federal employment discrimination action might be brought by a plaintiff class that also maintains an FLSA overtime pay action against their employer. But the outcome may be different where one of the claims is based in state law. Federal courts are courts of limited jurisdiction. Where a party seeks supplemental jurisdiction of a state-law action, we will evaluate jurisdiction under the statutory principles of 28 U.S.C. § 1367.

15. Pennsylvania law provides for a modified opt-out class:

(a) Except as provided in subdivision (b) or as otherwise provided by the court, in certifying a plaintiff class or subclass the court shall state in its order that every member of the class is included unless by a specified date a member files of record a written election to be excluded from the class.

(b) If the court finds that

(1) the individual claims are substantial, and the potential members of the class have sufficient resources, experience and sophistication in business affairs to conduct their own litigation; or

As we analyze the different levels of proof required and the relevant federal and state interests, the disparity in numbers here gives us pause. In terms of the number of plaintiffs, the sheer difference in numbers between the two prospective classes, 447 as opposed to 4,100, may constitute substantial predomination by the state WPCL action under section 1367.

Generally, the distinction between opt-in and opt-out classes is crucial. Under most circumstances, the opt-out class will be greater in number, perhaps even exponentially greater. Opt-out classes have numbered in the millions. *See In re Prudential*, 148 F.3d at 289-90. The aggregation of claims, particularly as class actions, profoundly affects the substantive rights of the parties to the litigation. Notably, aggregation affects the dynamics for discovery, trial, negotiation and settlement, and can bring hydraulic pressure to bear on defendants. The more aggregation, the greater the effect on the litigation.

But the size of a prospective class is important for another reason. Within the universe of possible claimants, it determines how many prospective plaintiffs remain outside the class structure who are able to bring their own individual suits. A large class with few claimants with viable claims remaining outside is more likely to result in a resolution bringing "global peace." Conversely, a smaller class in relation to the universe of possible claimants, usually the result of an opt-in structure, will leave open the possibility of more suits, assuming these are actions that can be maintained individually.

We do not tout the relative merits of either approach. For our purposes, it is sufficient to note that mandating an opt-

---

(2) other special circumstances exist which are described in the order,

the court may state in its order that a person shall not be a member of the plaintiff class or subclass unless by a specified date the person files of record a written election to be included in the class or subclass.

Pa. R. Civ. P. 1711.

in class or an opt-out class is a crucial policy decision. Congress has selected an opt-in class for FLSA actions.[16]

Predomination under section 1367 generally goes to the type of claim, not the number of parties involved. But the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog.

Within the section 1367(c) analysis, certain issues of state law presented in the WPCL action also weigh heavily, tilting the balance against the exercise of supplemental jurisdiction. Pennsylvania courts have not addressed two novel and complex questions of state law squarely presented here: whether a WPCL action may rest on an implied employment contract that relies on alleged oral representations by Tyson managers; and whether the WPCL pertains to at will, non-collective bargaining employees. The need to resolve these issues, which are better left to the Pennsylvania state courts, weighs in favor of declining supplemental jurisdiction. 28 U.S.C. § 1367(c)(1).

Whether the allegations of an implied employment contract run to the entire WPCL class is also in dispute and would implicate the predominance inquiry of Fed. R. Civ. P. 23(b)(3). "In cases involving implied contracts of employment, the litigant will be able to reach the jury only if he can clearly show that he and the employer intended to form a contract." *DiBonaventura v. Consolidated Rail Corp.*, 539 A.2d 865, 868 (Pa. Super. Ct. 1988). Because the FLSA claim does not require an intent to form a contract, individual questions of implied contract formation with respect to each member of the WPCL class might conceivably predominate over the issues common to the claims of the FLSA plaintiffs.

---

16. Similarly, Congress has selected an opt-in class for actions under the Age Discrimination in Employment Act. *See Sperling v. Hoffman-LaRoche, Inc.*, 24 F.3d 463, 464 (3d Cir. 1994) ("Section 7(b) of ADEA expressly borrows the opt-in class mechanism of section 16(b) of the Fair Labor Standards Act of 1938."). As noted, in the absence of contrary congressional mandates, class actions in federal court are governed by Fed. R. Civ. P. 23.

We review a district court's exercise of supplemental jurisdiction for abuse of discretion. *See Lyon*, 45 F.3d at 760 ("[I]t is possible that even if the district court had the power to hear the supplemental claims, it abused its discretion in doing so."). In exercising supplemental jurisdiction over the WPCL action here, the District Court held that "adding extra class members alone, whose interests will be represented by the named Plaintiffs, will not make the state law claims predominate. Regardless of the number of class members, the named plaintiffs will represent all of those with an FLSA claim or a WPCL claim." *De Asencio v. Tyson Foods, Inc.*, 2002 U.S. Dist. LEXIS 13038, at *16 (E.D. Pa. July 17, 2002).

But whether the same group of named plaintiffs represent both the state and federal classes is not dispositive under *Gibbs*. Instead, a court must examine the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without prejudice to determine whether the state claim constitutes the real body of the case. This necessarily is a case-specific analysis. Here, the inordinate size of the state-law class, the different terms of proof required by the implied contract state-law claim, and the general federal interest in opt-in wage actions suggest the federal action is an appendage to the more comprehensive state action.

We also are mindful of the unique circumstances surrounding this litigation. On August 22, 2000, plaintiffs filed this suit. The complaint included both the FLSA and WPCL causes of action. On October 4, 2000, plaintiffs sought collective action treatment of their FLSA claim but did not seek certification of a class on the WPCL claim. It was not until nearly 17 months later, on February 22, 2002, after the District Court had closed the FLSA class period and ended discovery, that plaintiffs filed a motion to certify a class on the WPCL claim. Moreover, it was not until May 14, 2002, that plaintiffs first raised their implied contract theory to support the WPCL claim.

The way in which this suit evolved lends even greater credence to the conclusion that certification of the state-law class was plaintiffs' second line of attack when the FLSA

opt-in period yielded a smaller than desired federal class. This may be proper strategy where the state and federal actions raise similar issues and require similar terms of proof. But here, the state interest in whether plaintiffs may prevail on an implied contract WPCL action is disproportionately high.[17]

Accordingly, we find the District Court did not exercise sound discretion in granting supplemental jurisdiction over the WPCL action.[18]

## III.

Of the approximately 3,400 FLSA notices that Tyson mailed to current or former employees, nearly 800 of them were "undeliverable" and "returned to sender" due to incorrect addresses.[19] The record also demonstrates that

17. In discussing amendments to 28 U.S.C. § 1367, the Federal Courts Study Committee recommended: "In order to minimize friction between state and federal courts . . . Congress should direct federal courts to dismiss state claims if these claims predominate or if they present novel or complex questions of state law, or if dismissal is warranted in the particular case by considerations of fairness or economy." Report of the Federal Courts Study Committee, 47-48 (Apr. 2, 1990).

18. Consistent with our holding, we will deny certification of the WPCL class with respect to all plaintiffs, including those who opted into the FLSA class. Our decision does not necessarily preclude the exercise of supplemental jurisdiction where all plaintiffs with state law claims have opted into the FLSA class. *See Alvarez v. IBP, Inc.*, 2003 U.S. App. LEXIS 15622 (9th Cir. Aug. 5, 2003). These matters are committed to the sound discretion of the District Court. *See* 28 U.S.C. § 1367.

19. The Notice and Consent Form, written in English and Spanish, was disseminated as follows:

(1) for existing workers who are class members, Tyson shall insert the Notice and Consent Form with the workers' next paycheck, along with a postage paid envelope addressed to Plaintiffs' counsel;

(2) for former workers who are class members, Tyson shall mail immediately the Notice with Consent Form to the workers' last known addresses, along with a postage paid envelope addressed to Plaintiffs' counsel; and

(3) Tyson shall promptly file with the Court, and serve a copy to Plaintiff's counsel, written certification confirming it has fully complied with the Court's Order including the date(s) that it complied with the instant Order.

Tyson hired approximately 700 employees after it mailed the notice, and those employees never received notice. Nevertheless, the District Court closed the opt-in period and denied plaintiffs' motion to reissue notice to all potential plaintiffs. The resulting number of 447 plaintiffs represented approximately 11 percent of the then-eligible class.

In class actions, courts have equitable powers to manage the litigation in order to promote judicial economy and fairness to litigants. *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 232 (3d Cir. 2002) (noting the "equitable nature of class action proceedings"); *In re Orthopedic Bone Screw Prods. Liab. Litig*, 246 F.3d 315, 321 (3d Cir. 2001) (discussing a court's equitable powers to "manage" class action litigation). For this reason, we direct the District Court to reopen the FLSA opt-in period for a reasonable period of time to allow additional notice to all eligible current and former employees. Tyson should make all reasonable efforts to provide notice to these potential class members.

## IV.

For the foregoing reasons, we will reverse the judgment of the District Court and remand for proceedings consistent with this opinion.

A True Copy:
      Teste:

               *Clerk of the United States Court of Appeals*
                    *for the Third Circuit*