NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1160
_____

KATHERINE GARGES,
                                        Appellant,

v.

THE PEOPLE'S LIGHT & THEATRE COMPANY; ADRIA
CHARLES, INDIVIDUALLY; JOHN DAVID CLEMENS, JR.,
INDIVIDUALLY; TERENCE ECHLIN, INDIVIDUALLY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 09-cv-02456)
District Judge: Honorable Gene E.K. Pratter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 3, 2013

Before:   SCIRICA, JORDAN and GREENAWAY, JR., Circuit Judges

(Opinion filed: June 28, 2013)
_____

OPINION
_____


PER CURIAM

        Appellant Katherine S. Garges appeals from orders of the District Court

dismissing claims from her original complaint, striking claims from her second amended

complaint, and awarding summary judgment to the defendants. For the following reasons, we will affirm.

Garges was employed beginning in 2002 as a telemarketer/sales representative for the People's Light & Theatre Company in Malvern, Pennsylvania.[1] She worked 12 to 15 hours per week and was compensated under a commission system. On the morning of July 5, 2007, Garges discovered an error in her paycheck amounting to $250.00. She approached Stella Bates, the Theatre's Business Manager, and that same morning Bates provided her with a check for the missing amount. Garges returned to the telemarketing room, and emailed the Pennsylvania Department of Labor about the payroll error; she then showed Bates the Pennsylvania wage statute. She also left a message for her supervisor, Adria Charles, explaining that there had been an error in her pay, that she had been given a hard time about it, and that an employer who makes payroll mistakes can ultimately be fined under state law for continued payroll errors.

Terence Echlin, a co-worker, was present that morning, and he called Charles and told her that Garges had been disruptive in the telemarketing room. When Garges arrived at the Theatre that evening, Charles told her that she needed to speak with her immediately. Garges stated that she had a scheduled sales call at 6:00 p.m. and did not have time to speak with Charles at the moment. Charles continued to insist, and Garges finally said, "I'll eat your ass if you want me to, but I have to make this phone call first." She then proceeded to make the telephone call. Charles told Garges she was fired and tried to remove the phone receiver from Garges' hand. Charles then left to find *her* supervisor, Ellen Anderson, and Anderson came to the telemarketing room and told

_____

[1] The parties are familiar with the factual circumstances of the claims; our recitation will thus be succinct.

Garges she was fired and had to leave. Eventually the police were called and Garges was escorted from the building. After Garges left, her sales leads were distributed by Charles to other telemarketers. A former telemarketing employee, a male, was hired that evening.

After her termination, Garges filed for unemployment compensation. Her claim was initially denied. She appealed, and a hearing was scheduled. No one from the Theatre attended the appeal hearing. Garges' appeal was granted.

On May 29, 2009, and after exhausting her administrative remedies, Garges filed suit in the United States District Court for the Eastern District of Pennsylvania, alleging that the Theatre discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Equal Pay Act of 1963, the Fair Labor Standards Act of 1938 ("FLSA"), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. §§ 951 et seq. Charles, Echlin, and another of her co-workers, John David Clemens, Jr., also were named as defendants, and Garges included in her complaint several claims arising under state and common law, including assault and battery, wrongful termination, breach of contract, intentional interference with business relations, defamation, and intentional infliction of emotional distress.

Early in the litigation, the defendants moved to dismiss several of Garges' claims. In an October 29, 2010 Memorandum, the District Court granted the motion in part. The court discussed the sufficiency requirements of Federal Rule of Civil Procedure 12(b)(6), and reasoned that the assault and battery claim against the Theatre (Claim 21) and the ratification of assault and battery, negligent hiring, and negligent supervision claims (Claims 22-24) arose out of an employment relationship between Garges and the Theatre and thus were barred by the Pennsylvania Workers' Compensation Act's exclusivity

3

provision, 77 Pa. Cons. Stat. Ann. § 481(a). See Garges v. People's Light & Theatre Co., 2010 WL 4273335, at *3-4 (E.D. Pa. October 29, 2010). These claims were dismissed. After reviewing allegations that Clemens often yelled the word "bitch" after an unsuccessful sales call, that he made comments hostile to feminism, that Echlin lied with the goal of getting Garges fired, and that Echlin heckled Garges and hummed, the District Court also dismissed the intentional infliction of emotional distress claim, Claim 28, with prejudice against all of the defendants. See id. at *4. The court reasoned that the conduct alleged was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (citing Hoy v. Angelone, 720 A.2d 745 (Pa. 1998). Garges voluntarily withdrew Count 16. Garges, 2010 WL 4273335, at *2 n.4.

After the defendants submitted their answers, Garges filed a first amended complaint. The defendants moved to strike it, arguing that it stated no new claims. The District Court granted the motion, but allowed Garges to refile an amended complaint. Garges then filed a second amended complaint, raising all of the claims she originally set forth, including those that were previously dismissed by the court or withdrawn. The defendants moved to strike the second amended complaint. In its January 24, 2012 Memorandum, the District Court granted the motion in part, striking Counts 16, 22, 23, and 24 in their entirety and Count 21 as to the Theatre from the second amended complaint. Garges v. People's Light & Theatre, Co., 2012 WL 202828, at *5 (E.D. Pa. January 24, 2012). After reviewing Garges' additional allegations of intentional infliction of emotional distress, the District Court determined that Garges still could not

4

meet the "extreme and outrageous" standard; the court thus ordered that Count 28 also be stricken from the second amended complaint. See id.

The defendants submitted their answers and discovery ensued. Garges twice moved unsuccessfully for appointment of counsel. The defendants moved for summary judgment, Fed. R. Civ. Pro. 56(a). In a Memorandum filed on December 17, 2012, the District Court granted summary judgment to the defendants on Garges' federal claims, including her gender discrimination/disparate treatment Title VII claims (Claims 1, 3, 5, and 13); her hostile work environment claim (Claim 11); her retaliation claims (Claims 7 and 25); her mixed motive claim (Claim 9); her Equal Pay Act claim (Claim 15); and her Equal Pay/Fair Labor Standards Act claim (Claim 18). See Garges v. People's Light and Theatre, Co., 2012 WL 6592201, at * 14 (E.D. Pa. December 17, 2012). The court "decline[d] to exercise supplemental jurisdiction over the *remaining* claims." Id. (emphasis added). The court then issued a separate Order, also dated December 17, 2012, granting the motion for summary judgment and specifying which claims were dismissed with and without prejudice. The order omitted any reference to Claim 27 for defamation as having been dismissed without prejudice.

Garges appeals. We have jurisdiction under 28 U.S.C. § 1291. Garges argues in her brief that the credibility of the individuals involved in her termination is at issue and thus summary judgment was not appropriate, Appellant's Brief, at 6. Specifically, she argues that the proferred reason for her termination – insubordination – was a pretext for gender discrimination in that her performance was outstanding and other employees of the Theatre had never before been terminated for complaining about their paychecks or for using profanity. Garges argues that Charles, who had been Sales Director for only

four months, fired her for conduct that was tolerated under the former Sales Director, and that Charles gave no advance warning of any change in Theatre policy relating to the telemarketers' conduct. In additional support of her claim of gender discrimination, Garges notes that a male telemarketer was immediately hired upon her termination, Clemens and Echlin received more hours than she did, and her sales leads were distributed to males after she was terminated. She argues that the District Court erred in dismissing her claim for intentional infliction of emotional distress (Claim 28) from the original complaint and striking it from the second amended complaint, see id. at 25-27; that the District Court should not have declined to exercise supplemental jurisdiction over her remaining claims, see id. at 27; and that the District Court should have appointed her counsel, see id. at 29. Last, if we order a remand, Garges asks that we reassign her case to a different district judge, see id. at 30.[2] Garges has also filed several motions in this Court.

We will affirm. We begin with Garges' contention that she is entitled to a trial on her claim that her termination violated Title VII. We review a District Court's grant of summary judgment de novo. Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007). Summary judgment is proper where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec.

---

[2] Garges raises no specific argument relating to the District Court's dismissal of Counts 22, 23, and 24 in their entirety, and Count 21 as to the Theatre on the basis of the workers' compensation act's exclusivity provision, and thus she has waived this issue. See Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993).

Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, see id. at 587, but the nonmoving party may not rest on mere allegations or denials of her pleading, Fed. R. Civ. Pro. 56(e)(2). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

We conclude that summary judgment was proper because there was an insufficient evidentiary basis on which a reasonable jury could find in Garges' favor on any of the claims over which the District Court exercised jurisdiction. Matsushita Elec. Indus. Co., 475 U.S. at 586-87; Anderson, 477 U.S. at 249-50. Assuming arguendo that Garges made out a prima facie case for gender discrimination, there was no triable issue because Garges did not show that the Theatre's reason for terminating her – insubordination – was a pretext for discrimination, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (if plaintiff establishes prima facie case of discrimination, burden shifts to employer to articulate legitimate nondiscriminatory reason for its actions), or provide other evidence of discrimination, St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509-11 (1993).

To survive a motion for summary judgment, a plaintiff may prevail either by discrediting the employer's proffered reasons or by showing that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). "To discredit the employer's proffered reason … the plaintiff cannot simply show that the employer's decision was wrong or mistaken…. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

7

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence." Id. at 765. A plaintiff may support an assertion that an invidious discriminatory reason was more likely than not a motivating cause by showing that "the employer has treated more favorably similarly situated persons not within the protected class." Jones v. School Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999).

The District Court reasoned, and we agree, that Garges did not show weakness or implausibility in the Theatre's proffered reason for terminating her such that a reasonable jury could find in her favor. Not only did Garges direct a vulgarity personally at Charles, she also refused to comply with a directive that she meet immediately with Charles. Garges' contention that other telemarketers, like Clemens, frequently lost their tempers and used profane language and were not fired does not convince us that a trial is warranted in her case, because there is no evidence to show that Clemens or anyone else ever directed their offensive comments or behavior at a supervisor personally, or that they refused to comply with a supervisor's order. Garges' contention that Charles gave no advance warning of any change in Theatre policy relating to the telemarketers' conduct is similarly unpersuasive because Garges' did not show or even allege that the Sales Director who preceded Charles tolerated vulgarities directed at her personally or tolerated refusals to comply with her orders. Garges argues that profanity was used regularly in the Theatre by both men and women and that she was terminated for a one-time use of a profanity, but she offered no evidence to show that another telemarketer directed a vulgarity personally at a supervisor and/or patently refused to follow a supervisor's directive and was not fired. In addition, Garges did not offer evidence to show that a

8

male employee complained about his paycheck but was not fired. Thus, she was not similarly situated to any other Theatre employee in being terminated for her misconduct.

Garges' additional evidence that the Theatre hired males before and after her termination, and that her leads were given to males after her termination, does not show that summary judgment was improper. The summary judgment record shows, among many other things noted by the District Court, that eleven new telemarketing employees were hired between April and August of 2007, six of whom were women, and no specific person was hired to replace Garges. Moreover, her assertion that Clemens and Echlin had better working conditions than she did is insufficient because she never asked to telework, and when she asked for extra hours she was given them. She also did not show that sales leads were handed out improperly on the basis of gender. The redistribution of her leads to some males immediately after she was fired is insufficient to cast doubt on the Theatre's proffered reason for the firing given that the immediate redistribution of leads was standard practice at the Theatre, and three experienced female employees "were all on vacation that night. . . ." Appellant's Brief, at 15.

For similar reasons, summary judgment was proper on Garges' hostile work environment claim under Title VII. Garges claimed that, in addition to his frequent use of the word "bitch," Clemens also once asked her if she preferred to be "on top." Both Clemens and Echlin made negative comments about women's issues, both men were privy to certain information about proposed improvements in the Theatre's commissions policy, and Echlin hummed, and she was heckled. The District Court reasoned, and we agree, that the gender discrimination alleged was neither pervasive nor severe. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-23 (1993) (to make out claim for hostile

9

work environment discriminatory conduct alleged must be pervasive and severe). Much of the gender-related behavior involved one-time comments, and the heckling, humming, and privileged access to information did not involve gender. Clemens' frequent use of the word "bitch" was directed at "rude" customers, and, in any event, Garges did not allege that her work performance was detrimentally affected by this behavior. See id. (prima facie case requires showing that discriminatory conduct unreasonably interfered with plaintiff's work). In addition, Garges did not show that either Clemens or Echlin was a supervisor, or that the Theatre neglected its duty to take remedial action where such action was required. See Huston v. Proctor & Gamble Paper Products Corp., 568 F.3d 100, 104 (3d Cir. 2009) (employer liability for co-worker harassment exists only if employer failed to provide reasonable avenue for complaint or if employer knew or should have known of harassment and failed to take prompt and appropriate remedial action).

Summary judgment was proper on all of Garges' retaliation claims. She claimed that her termination was in retaliation for complaining about payroll errors, complaining about the Theatre's unequal distribution of sales leads, and complaining about Clemens' use of the word "bitch," and that these are protected activities under Title VII and the other federal statutes. This argument fails because, as explained, the Theatre had a legitimate reason for terminating Garges and thus she cannot show the required causal connection between her complaints, whether or not they are protected, and her termination. See Farrell v. Planters Life Savers Co., 206 F.3d 271, 279 (3d Cir. 2000) (retaliation claim requires proof of causation). Summary judgment also was proper on Garges' Title VII "mixed motive" claim. A "mixed motive" claim is made out where a

10

plaintiff shows that gender was a motivating factor in her termination, even though other factors also motivated the termination. 42 U.S.C. § 2000e–2(m). The plaintiff is not required to present direct evidence of discrimination in order to proceed; circumstantial evidence is sufficient. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003). Here, Garges offered no direct or circumstantial evidence that her gender was a motivating factor in her termination. Summary judgment was proper on Garges' Equal Pay Act claim because the summary judgment record showed that all telemarketing employees, regardless of gender, were paid based on the same commission formula. See Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000) (plaintiff must show that employees of opposite sex were paid more for same job).

Garges has argued that the defendants intentionally caused her emotional distress in connection with her termination and that Claim 28, both as stated in her original complaint and as supplemented in her second amended complaint, should not have been dismissed. The District Court dismissed this claim early in the litigation upon the defendants' motion. We agree with the District Court that Claim 28 did not satisfy Rule 12(b)(6). To survive a motion to dismiss, the claim must allege facts that, if true, "give rise to an entitlement to relief," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). The District Court held in October, 2010 that the conduct alleged in the original complaint concerning Garges' termination, and the events leading up to it, was not outrageous or extreme, and could not provide a basis for damages under Hoy, 720 A.2d at 753-54 (to recover damages, plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."). We agree.

11

The conduct alleged concerning the termination and the events leading up to it was unexceptional. Even the allegations in the second amended complaint – that the Theatre told Garges' relatives that she was suicidal and mentally ill, and that the defendants tried to destroy her reputation and career, and/or drive her to suicide – are not extreme enough to make out a claim for intentional infliction of emotional distress, and thus the District Court properly struck Claim 28 from the second amended complaint when Garges tried to reintroduce it.

With respect to the issue of supplemental jurisdiction, Garges has asked us to require the District Court to address and decide her remaining state claims. The appellees agree that the District Court should have exercised jurisdiction over Garges' Pennsylvania Human Relations Act claims (Claims 2, 4, 6, 8, 10, 12, 14 and 26) because they are governed by the same legal standards that apply to Garges' Title VII claims, see Huston, 568 F.3d at 104 n.2 (Title VII and PHRA claims analyzed under same standard), and because the facts asserted in support of them are identical to the facts asserted in support of the Title VII claims. See Appellees' Brief, at 52-53. The appellees agree with the District Court's decision not to exercise jurisdiction over Garges' other remaining state and common law claims: Claim 17 for wrongful termination, Claim 19 for breach of contract, Claim 20 against Clemens and Echlin for intentional interference with business relations, Claim 21 for assault and battery against Charles, and Claim 27 for defamation. See id. at 53.

We conclude that the District Court did not err in declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the remaining state and common law claims, including the PHRA claims. "In enacting section 1367, Congress

12

intended to enhance a district court's ability to gain jurisdiction over pendent claims and parties while providing those courts with the discretion to decline to exercise supplemental jurisdiction in several express circumstances." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003). Importantly, pendent jurisdiction is a doctrine of discretion. See id. (citing United Mine Worker of America v. Gibbs, 383 U.S. 715, 726 (1966)). A district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, the District Court dismissed all of the remaining state and common law claims after awarding summary judgment to the defendants on all of the federal claims over which it had original jurisdiction. Clearly, the District Court's determination not to exercise pendent jurisdiction over Garges' claims for wrongful termination, breach of contract, intentional interference with business relations, assault and battery against Charles, and defamation was not an abuse of discretion because the legal standards that apply to these claims differ from the standards that apply to Garges' federal claims. As to the other claims, we note that other district courts have retained jurisdiction over PHRA claims in similar circumstances, cf. Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (considerations of judicial economy, convenience, and fairness to parties may provide affirmative justification for exercising pendent jurisdiction), but the appellees have cited no authority that requires a district court to do so.

For the foregoing reasons, we will affirm the orders of the District Court dismissing claims from the original complaint, striking claims from the second amended complaint, and awarding summary judgment to the defendants. The orders of the District Court denying Garges' motions for appointment of counsel also are affirmed. See

13

Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993) (counsel not warranted where pro se litigant has skills necessary to handle her case). Garges' motions "to correct a clerical error" are denied with respect to Claim 28 because it was dismissed early in the litigation with prejudice.[3] The motions are granted to the extent that she seeks to modify the District Court's December 17, 2012 Order to include that Claim 27 (for defamation) was dismissed without prejudice. The omission of Claim 27 from the list of claims that were dismissed without prejudice appears to have been an oversight that we may correct without the formality of a correction by the District Court. See In re: U.S. Healthcare, Inc., 193 F.3d 151, 158 n.2 (3d Cir. 1999). Garges' motion to supplement the district court record with her June 15, 2009 letter is denied.[4]

---

[3] The District Court stated in its December 17, 2012 Memorandum that it would decline to exercise supplemental jurisdiction over the "remaining" state law claims, Garges, 2012 WL 6592201, at *14. Claim 28 was not one of the "remaining" claims, as that term is commonly understood.

[4] Federal Rule of Appellate Procedure 10(e)(2)(C) allows the court of appeals to correct inadvertent omissions from the record where "anything material to either party is omitted." Although the District Court construed the June 15, 2009 letter as a request for recusal under 28 U.S.C. § 455(a) and denied it, Garges has not challenged that order on appeal nor has she argued in her brief that the court's decision not to recuse was in error; rather, she asks only that her case be reassigned to a different district judge *if* we decide to remand. Accordingly, the letter is not material to her appeal.