Margarita **SHERRILL**, et al., Plaintiffs,

v.

**SUTHERLAND GLOBAL SERVICES, INC.**, et al., Defendants.

No. 05–CV–6537L.

United States District Court, W.D. New York.

May 11, 2007.

---

lective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and as a class action under Rule 23 of the Federal Rules of Civil Procedure to pursue claims under the New York Labor Law.[1] (Docket # 1). Since then, thirty-eight additional individuals have sought to "opt-in" to this action, each having filed a consent to be added as a plaintiff. Currently before this Court is plaintiffs' motion to conditionally certify this action as a collective action under the FLSA and to provide court-authorized notice of the action to all potential members of the class.[2] Plaintiffs also seek discovery of the names and other identifying information of defendants' former and current employees to facilitate notification. (Docket # 62). Defendants Sutherland Global Services, Inc. and The Sutherland Group Ltd. (collectively, "Sutherland") have cross-moved requesting, among other things, the right to review and comment upon plaintiffs' proposed notice in the event that this Court authorizes notice. (Docket # 69).

Stanley J. Matusz, Rochester, NY, for Plaintiffs.

Edmund C. Baird, Linda T. Prestegaard, Phillips Lytle LLP, Rochester, NY, for Defendants.

### DECISION & ORDER

PAYSON, United States Magistrate Judge.

Named plaintiffs Margarita Sherrill and Tony Falso initiated this lawsuit as a col-

### FACTUAL BACKGROUND

At all times relevant to this action, Sutherland was in the business of providing telemarketing services to its customers. Sutherland operated nine call centers throughout Western and Central New York, as well as one center in San Diego, California and one in Virginia Beach, Virginia. (Docket # 38 at ¶ 15; Docket # 40 at ¶ 15). Telemarketing employees, or "agents" as Sutherland commonly referred to them, were organized into teams and assigned to particular pro-

---

1. Plaintiffs have not filed any motion for class certification under Rule 23, so that issue has yet to be determined.

2. By order dated December 7, 2005, the above-captioned matter has been referred to the undersigned for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(A) and (B). (Docket # 7).

jects. The teams were led by supervisors who monitored the agents' productivity and attendance. The two original plaintiffs and thirty-eight opt-in plaintiffs are former telemarketing agents who were employed at various Sutherland call centers.

According to plaintiffs, Sutherland adopted and enforced wage and hour policies that violated the FLSA and the New York Labor Law. Specifically, plaintiffs have identified three such allegedly unlawful policies, which are described below.

**1. Automatic Deduction Policy:** According to plaintiffs, Sutherland had a long-standing policy of using its computerized timekeeping system (the "Kronos" system) to make automatic sixty-minute deductions from each employee's daily pay to reflect lunch breaks. These deductions were made routinely without regard to whether the employee actually worked during all or part of the lunch break. Plaintiffs further claim that as a result of their heavy workload and the pressure to maintain productivity, employees often performed work during their lunch periods for which they were not compensated.

In support of their claim, plaintiffs have submitted eight affidavits from former employees of Sutherland, all of whom are representative or opt-in plaintiffs, describing the automatic deduction policy. For example, Simuel Brown, who worked at Sutherland's Pittsford, New York and Henrietta, New York locations, affirmed that when he was employed as an hourly call center employee, he was regularly scheduled for nine hours per day with a sixty-minute lunch break. He and other employees frequently worked during some or all of the lunch period. Despite this, Sutherland automatically deducted sixty minutes from their hours irrespective of whether they had used or had worked through some or all of the lunch period.

(Docket # 54 at ¶¶ 3–6). Brown further affirmed that during a three-month period beginning in April 2005, he worked as a supervisor and was responsible for twelve employees. As a supervisor, Brown was instructed to deduct a sixty-minute lunch period for every employee regardless of whether the employee actually worked during all or part of it. Brown affirmed that during his tenure as a supervisor, he observed employees working during the lunch period who were not compensated for that work. (Docket # 52 at ¶¶ 7–8).

The affidavits submitted by other former agents describe Sutherland's consistent application of the automatic deduction policy to other telemarketing agents at other Sutherland locations. (*See* Docket # 55 at ¶¶ 5–14; Docket # 56 at ¶¶ 3–5; Docket # 57 at ¶¶ 3–8; Docket # 58 at ¶¶ 4–8; Docket # 59 at ¶¶ 4–6; Docket # 60 at ¶¶ 3–6; Docket # 74 at ¶¶ 6–11).

**2. Off–the–Clock Work:** The second policy challenged by plaintiffs relates to "off-the-clock" work. According to plaintiffs, Sutherland required or encouraged its call center agents to arrive early to work in order to review and complete paperwork, sign on to the computer and the Kronos system, and review e-mail communications. According to the affidavits submitted, employees often arrived fifteen to thirty minutes before the start of their shifts. Plaintiffs allege that Sutherland's management was aware that agents were performing work prior to the start of their scheduled shifts, but instructed them not to sign onto the Kronos system until at or near their scheduled start time. As with the automatic deduction policy, the result of the off-the-clock work policy was to deprive employees of compensation for time spent working for Sutherland. (*See* Docket # 54 at ¶¶ 10–13; Docket # 55 at ¶¶ 15–19; Docket # 56 at ¶¶ 6–7; Docket # 57 at ¶¶ 9–11; Docket # 58 at ¶¶ 9–11;

Docket # 59 at ¶¶ 7–10; Docket # 60 at ¶¶ 7–9; Docket # 74 at ¶ 12–16).

**3. Failure to Include Commissions in Overtime Calculation:** Finally, plaintiffs allege that Sutherland failed to properly compensate them for overtime work as a result of Sutherland's exclusion of commissions and bonuses in calculating overtime rates. As plaintiffs' motion papers explain in detail, the failure to include an employee's commissions and bonuses when calculating that employee's regular rate of pay, which determines the appropriate overtime rate, results in application of in a lower overtime rate than would apply were commissions and bonuses properly included in the rate of pay.

Specifically, seven plaintiffs have submitted affidavits affirming that although they earned commissions on sales while working for Sutherland, those commissions were not included in their regular rate of pay when Sutherland calculated overtime rates. (*See* Docket # 54 at ¶¶ 14–16; Docket # 55 at ¶¶ 20–22; Docket # 56 at ¶¶ 8–10; Docket # 57 at ¶¶ 12–14; Docket # 59 at ¶¶ 11–13; Docket # 60 at ¶¶ 10–12; Docket # 74 at ¶¶ 17–19). Thus, plaintiffs allege, Sutherland failed to properly compensate them for overtime hours they had worked.

## DISCUSSION

Plaintiffs seek an Order from this Court conditionally certifying an FLSA collective action and authorizing notice of the action to be sent to potential class members. (Docket # 62). As for the definition of the class, plaintiffs contend that it should consist of all current and former Sutherland hourly employees who worked for Sutherland since October 11, 2002. Defendants maintain that the class should be more narrowly defined.

■ **A.** *Conditional Certification and Notice:* Section 216(b) of the FLSA "provides for a representative right of action to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions." *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 260 (S.D.N.Y.1997). A collective action for the recovery of unpaid wages may be brought "against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions brought under the FLSA are different in various respects from class actions under Rule 23 of the Federal Rules of Civil Procedure. For example, FLSA collective actions are "opt-in" actions; "[u]nder the FLSA, potential plaintiffs must 'opt in' to a collective action to be bound by the judgment (and to benefit from it)." *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. at 260. In addition, plaintiffs in a collective action need not satisfy the other requirements—numerosity, commonality, typicality and adequacy of representation—to bring a class action under Rule 23. *Hens v. ClientLogic Operating Corp.*, 2006 WL 2795620, *3 (W.D.N.Y.2006); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 386 (W.D.N.Y.2005); *see also Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y.1995).

■ Determination of whether certification of a collective action is appropriate involves a two-step process. *Hens v. ClientLogic Operating Corp.*, 2006 WL 2795620 at *3. First, the court reviews the pleadings, as well as any affidavits or declarations, and determines whether the proposed class members are similarly situated. *Id.; Barrus v. Dick's Sporting Goods, Inc.*, 465 F.Supp.2d 224, 229 (W.D.N.Y. 2006). "[P]laintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and poten-

tial plaintiffs together were victims of a common policy or plan that violated the law." *Hoffmann,* 982 F.Supp. at 261 (*citing Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995)); *see Krueger v. New York Tel. Co.,* 1993 WL 276058, *2 (S.D.N.Y.1993) (during early stages of litigation, "plaintiff need only set forth substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination") (internal quotation omitted). "If the plaintiff meets the 'similarly situated' requirement, a court may certify the class as a collective action and authorize notification of potential class members to permit them to 'opt-in' to the collective action." *Hens,* 2006 WL 2795620 at *3 (internal citations omitted). *See Hoffmann,* 982 F.Supp. at 262 (notice before full discovery is preferable in order to facilitate a more efficient resolution of the underlying issues) (*citing Krueger v. New York Tel. Co.,* 1993 WL 276058 at *2).

■ The second step of a collective action inquiry occurs at the close of discovery. *Hens,* 2006 WL 2795620 at *4. At that time, the court must examine the evidentiary record before it and make a factual finding whether the potential plaintiffs are similarly situated. If the court finds that the claimants are similarly situated, the collective action will proceed to trial. If it does not, the class will be decertified and the claims of the opt-in plaintiffs will be dismissed without prejudice. The class representatives will then proceed to trial on their individual claims. *Id.; Barrus v. Dick's Sporting Goods, Inc.,* 465 F.Supp.2d at 229.

■ Without conceding the "similarly situated" issue for the second phase of the inquiry described above, Sutherland acknowledges that at this stage plaintiffs have satisfied the modest evidentiary requirement of demonstrating a common pol-

icy or plan. Sutherland thus does not oppose plaintiff's motion to conditionally certify a collective action under the FLSA, nor does it oppose notifying potential class members of their right to opt-in to the litigation. Considering Sutherland's lack of opposition, and finding that plaintiffs have satisfied the requirements of 29 U.S.C. § 216, I determine that conditional certification of this collective action is appropriate.

The scope of the proposed class is in dispute, however. Plaintiffs seek to include in the class, and to send notices to, all hourly employees who worked for Sutherland since October 11, 2002. Sutherland argues that the class should be limited to telemarketing "agents" who worked in call centers in the Rochester and Syracuse areas. (Docket # 68–5).

■ To establish that the potential class members are similarly situated, the plaintiffs must demonstrate a "factual nexus" between the circumstances giving rise to their claims and the circumstances of those individuals whom plaintiffs seek to notify about this action. *See Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 101, 104 (S.D.N.Y.2003) (citing *Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303, 308 (S.D.N.Y.1998)). Considering first the geographic scope of the proposed class, I find that plaintiffs have demonstrated a sufficient nexus to justify sending notice to all appropriate employees at all Sutherland locations. Plaintiffs have submitted affidavits from eight individuals who worked as agents at ten of the eleven Sutherland call centers. Each describes uniform wage and hour policies at each facility, as well as the company-wide use of the Kronos system. Most illuminating is the affidavit submitted by Steven V. Evans, II. (Docket # 74). Evans worked at two different Sutherland locations in Henrietta, New York, as well as at

a third facility in San Diego, California. (Docket # 74 at ¶¶ 2–3). According to Evans, the three unlawful wage policies alleged in the Complaint—the automatic sixty-minute lunch deduction, the failure to compensate for work performed prior to the scheduled workday and the failure to include commissions and bonuses in the calculation of overtime rates—were in existence and enforced in both the New York and California facilities. (Docket # 74). Indeed, copies of time records generated by Sutherland for various of the affiants appear to reflect consistent application of the sixty-minute lunch deduction. (Docket # 76, Exhibits A–H).

■ On this record, I find that a sufficient factual basis exists to conclude that telemarketing agents at all Sutherland call centers were subjected to common policies that allegedly violated the FLSA. Thus, I conclude that sending notices to current and former agents at each facility is appropriate.

I reach a contrary conclusion with respect to the question whether notice should be sent to *all* hourly employees at these locations. Each affidavit has been submitted by individuals who worked as telemarketing agents at one or more of Sutherland's call centers. Although it is true that "a finding of 'similarly situated' does not require the plaintiffs to perform the same job in the same location as long as there is [an unlawful] policy common to all," *Abrams v. General Elec. Co.*, 1996 WL 663889, *2 (N.D.N.Y.1996), plaintiffs have not demonstrated that the Sutherland policies and practices complained of affect-ed hourly employees other than telemarketing agents.

Plaintiffs summarily assert that Sutherland utilized the Kronos system for all hourly employees. They have not, however, submitted any evidence to suggest that any other employees performed work before their scheduled work day or during their lunch period. Without such evidence, there is no basis to conclude that any factual nexus exists between the call center employees and other employees of Sutherland. Moreover, Sutherland avers that hourly employees in the recruiting, human resources, facilities and technology support departments were not eligible to earn commissions or bonuses. Accepting the veracity of such representation, overtime calculations for such employees could not have been understated as a result of the exclusion of commissions.[3] (*See* Docket # 68–5 at 8). I therefore find that the conditionally certified class shall be limited to former and current hourly employees who work or have worked as telemarketing agents at each of Sutherland's call centers since October 11, 2002.

■ **B.** *Facilitation of Notice:* To facilitate notice, plaintiffs have requested that Sutherland provide the identities, by name, last known address, telephone number and private e-mail address, of all potential class members. I agree that such information is essential to identifying prospective opt-in plaintiffs, and Sutherland shall disclose such information (with the exception of e-mail addresses), to the extent it possesses the same, within fourteen (14) days of receipt of this Order.

---

**3.** Insofar as Sutherland argues that it in fact properly calculated overtime rates for agents (Docket # 78), that argument is premature. At this stage, the Court is not required to resolve factual disputes or to consider the ultimate merits of the plaintiffs' claims. Rather, the Court "is deciding only that plain-tiffs have met their modest burden of showing a 'colorable basis' for their claims ... and, therefore, notice to *potential* class members is appropriate." *Barrus,* 465 F.Supp.2d at 231 (emphasis in original); *see Hoffmann,* 982 F.Supp. at 262.

Plaintiffs have also requested that Sutherland be required to e-mail notices to all class members, to post notices and opt-in forms in a conspicuous location and to publicize such notice three times in its employee newsletter. I find that this proposal, in addition to the mailing of notice by counsel for plaintiffs, is broader than necessary. Sutherland is hereby required to post continuous notice of this action and opt-in forms in a conspicuous location in each of its call centers during the ninety-day opt-in period referenced below. This method, along with the mailing of notices, strikes the appropriate balance between ensuring adequate notification, while also minimizing any disturbance to Sutherland's workplace.

**C. *Remaining Cross–Motions:*** Sutherland has also filed a cross-motion requesting that this Court monitor the notification process, requiring that the proposed notice be approved by Sutherland and the Court and establishing an opt-in deadline.[4] Plaintiffs do not oppose these motions. It is therefore ordered that within twenty (20) days of receipt of this Order, the parties shall jointly submit to this Court their form proposed notice. Once this Court has approved a notice, it will issue an order directing issuance of the notice to class members. Potential class members shall have ninety (90) days from the date of that order in which to opt-in to this FLSA action.[5]

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional certification as an FLSA collective action (**Docket # 62**) is **GRANTED** and for court authorized notice to potential class members (**Docket # 62**) is **GRANTED in Part and DENIED in Part.** Defendants' cross-motion (**Docket # 69**) is **GRANTED in Part and DENIED in Part.**

**IT IS SO ORDERED.**

---

4. Defendant also cross-moved for the removal of certain inaccurate statements from plaintiffs' counsel's website. (Docket # 69). Counsel voluntarily agreed to make the necessary corrections. (Docket # 73).

5. Although Sutherland suggested a forty-five-day opt-in period (Docket # 68–5), I find that a ninety-day period is more appropriate.