Francisco **PEREIRA**, on behalf of himself and all others similarly situated, Plaintiff,

v.

**FOOT LOCKER, INC.; Does 1 through 10, inclusive, Defendants.**

Civil Action No. 07–cv–2157.

United States District Court, E.D. Pennsylvania.

Sept. 11, 2009.

**61**

Gerald D. Wells, III, Katherine B. Bornstein, Robert W. Biela, James A. Maro, Jr., Robert J. Gray, Barroway Topaz Kessler Meltzer & Check LLP, Radnor, PA, Richard B. Sigmond, Jennings Sigmond, Philadelphia, PA, for Plaintiff.

Kathrine Sinatra, Kevin M. Smith, Kristen A. Page, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Shelley R. Smith, Lucretia C. Clemons, Ballard Spahr Andrews & Ingersoll LLP, Philadelphia, PA, Ena Diaz, Shook Hardy & Bacon LLP, Miami, FL, for Defendants.

### MEMORANDUM and ORDER

JOYNER, District Judge.

Before this Court are Plaintiff's Motion for Conditional Collective Certification pursuant to 29 U.S.C. § 216(b) (Doc. No. 53), Plaintiff's Motion for Class Action Certification pursuant to Fed. R.C.P. 23 (Doc. No. 50), Defendant's Response in Opposition (Doc. No. 66), Plaintiff's Reply (Doc. No. 85), Defendant's Surreply (Doc. No. 89), Plaintiff's Rebuttal Memorandum (Doc. No. 93), Plaintiff's Notice of Filing Supplemental Evidence (Doc. No. 100) and Defendant's Response to Plaintiff's Second Notice of Filing Supplemental Evidence (Doc. No. 103).

1. Defendant Foot Locker, Inc., includes stores branded "Foot Locker," "Lady's Foot Locker,"

### Background

Plaintiff filed this action in the Eastern District of Pennsylvania on May 25, 2007, alleging that Defendant Foot Locker,[1] had violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), as amended 43 Pa.C.S.C. § 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Act ("PWPCA"), 43 Pa.C.S.A. § 260.1, *et seq.*, by not compensating workers for hours worked and not compensating for overtime. Generally, Plaintiff alleges that Defendant has a central policy of strictly enforcing restricted hours budgets that are not adequate to do the work of the store. Specifically, Plaintiff alleges that time spent pre-opening and post-closing, doing necessary work for the maintenance of the store, is not compensated and employees are required to work off-the-clock or have their time shaved in order to do this work. Plaintiff alleges that Defendants enforced the policy by directly tying the compensation of the store managers to meeting the unrealistic labor budget set by Foot Locker corporate and by punishing managers for "going over" the insufficient budget. Defendant vigorously denies the allegations.

Plaintiff Pereira formerly worked at numerous Foot Locker stores under four different managers. In his declaration, he attests that he was not compensated for pre-opening and post-closing work because his manager was forced to stay within his restricted labor budget. Plaintiff's Complaint alleges both federal and state violations as follows: Count I: Failure to pay Plaintiff and each member of the nationwide class for all hours worked and failure to pay overtime compensation in violation of FLSA, 29 U.S.C. §§ 206, 207; Count II: Failure to compensate Plaintiff and each member of the nationwide class for all time worked off-the-clock and for shaved time, at a rate at least equal to the federal minimum wage; Count III: Failure to pay Plaintiff and each member of the Pennsylvania class for all of hours worked in violation of 43 P.S. § 333.104(a); Count IV: Failure to

"Kid's Foot Locker," and "Foot Action."

pay overtime to Plaintiff and each member of the Pennsylvania class in violation of 43 P.S. § 333.104( ) and 34 Pa.Code § 231.41; Count V: Failure to pay Plaintiff and all members of the Pennsylvania class all wages due to them as required by Pennsylvania Labor Laws, in violation of 43 P.S. § 260.3 and 43 P.S. § 260.5. Plaintiff has pled jurisdiction for the FLSA claims under 28 U.S.C. § 1331 and under 28 U.S.C. § 1367 for the state law claims. Three additional Plaintiffs have filed declarations opting-in to the action.

Discovery has been active in the case and Plaintiff has provided the Court with declarations, time sheets, sales records, internal complaints, internal documents and depositions. In its defense, Foot Locker has challenged Plaintiff's evidence with numerous declarations of putative plaintiffs who claim never to have worked off-the-clock or had their time shaved, as well as evidence of company policies, records of discipline, and time sheet evidence refuting that of the Plaintiff. The present Motions for Conditional Collective Certification and Class Action Certification were filed in September 2008, and parties have continued to submit briefs, declarations and evidence in the matter, with and without the Court's leave, through July 20, 2009.

### *Standard*

### Conditional Collective Certification

As Plaintiff has moved for conditional collective certification under FLSA, it is this Court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 170–171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). "The Court has the power to authorize notice in collective actions in order to set time limits for various pretrial steps and to avoid a multiplicity of duplicative suits." *Lugo v. Farmer's Pride,* No. 07–0749, 2008 U.S. Dist. LEXIS 17565, at *6–7, 2008 WL 638237, at *2 (E.D.Pa. March 7, 2008) (citing *Hoffmann–LaRoche,* 493 U.S. at 171–173, 110 S.Ct. 482). Actions brought under the FLSA are collective actions, and "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Pursuant to the FLSA, there are two requirements for potential plaintiffs to be included in the collective action: plaintiffs must (1) be "similarly situated" and (2) give written consent. 29 U.S.C. § 216(b). Courts engage in a two-step inquiry to determine whether class members are similarly situated for purposes of Section 216(b) of the FLSA. *Harris v. Healthcare Servs. Group, Inc.,* No. 06–2903, 2007 U.S. Dist. LEXIS 55221, at *6, 2007 WL 2221411, at *2 (E.D.Pa. July 31, 2007) (citations omitted). The first step is assessed early in the litigation process when there is minimal evidence and places a relatively light burden on plaintiffs to show that potential opt-in plaintiffs are "similarly situated." *Id.; Smith v. Sovereign Bancorp, Inc.,* No. 03–2420, 2003 U.S. Dist. LEXIS 21010, at *10, 2003 WL 22701017, at *3 (E.D.Pa. Nov. 13, 2003). When discovery is complete, a more fact-specific second-stage inquiry occurs into whether the proposed opt-in class is, indeed, similarly situated. *Id.*

The FLSA does not define the term "similarly situated" and neither the United States Supreme Court nor the Third Circuit provide direct guidance on determining whether potential class members are similarly situated. In the absence of definitive precedent, district courts in the Third Circuit have developed a two-stage test. *Bishop v. AT & T Corp.,* 256 F.R.D. 503, 507 (W.D.Pa.2009) (citing *Kronick v. Bebe Stores,* No. 07–4514, 2008 U.S. Dist. LEXIS 78502, at *1, 2008 WL 4546368, at *1 (D.N.J. Oct. 2, 2008)). However, courts in our Circuit differ as the requirements of the first stage. "Some courts have determined that plaintiffs need merely allege that the putative class members were injured as a result of a single policy of a defendant employer." *Bosley v. Chubb Corp.,* No. 04–cv–4598, 2005 U.S. Dist. LEXIS 10974, at *7–9, 2005 WL 1334565, at *2–3 (E.D.Pa. June 3, 2005) (citing *Goldman v. RadioShack,* No. 03–cv–0032, 2003 U.S. Dist. LEXIS 7611, at *27, 2003 WL 21250571, at *8 (E.D.Pa. Apr. 16, 2003); *Felix De Asencio v. Tyson Foods,* 130 F.Supp.2d 660, 663 (E.D.Pa.2001); *Sperling v. Hoffmann–La Roche,* 118 F.R.D. 392, 407

(D.N.J.1988), aff'd on other grounds, 862 F.2d 439 (3d Cir.1988), aff'd, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). While, "[o]ther courts have applied a stricter, although still lenient, test that requires the plaintiff to make a 'modest factual showing' that the similarly-situated requirement is satisfied." *Bosley,* 2005 U.S. Dist. LEXIS 7611, at *8–9, 2005 WL 1334565, at *3 (citing *Dybach v. Florida Dep't of Corrections,* 942 F.2d 1562, 1567–68 (11th Cir.1991); *Mueller v. CBS, Inc.,* 201 F.R.D. 425, 428 (W.D.Pa. 2001); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 362 (M.D.Ala.1999); *Jackson v. New York,* 163 F.R.D. 429, 431 (S.D.N.Y. 1995)).

Defendant urges this Court to perform a combined first and second stage certification analysis due to the amount of discovery that has taken place. At this point in the litigation, Plaintiff has provided his own declaration, as well as three others of opt-in Plaintiffs Andre Moore, Matthew Knighton, and Jennifer Hill. Williams Decl., Exhs. G, H, I, J. As discovery has been ongoing in this matter, Defendant has produced volumes of documents that pertain to both individual employees and to Foot Locker generally. In its Motions and Declarations, Plaintiff has submitted discovered time sheets, internal employee complaints, depositions of Foot Locker employees, communications between Foot Locker Managers and District Managers, emails between District Managers and Foot Locker Human Resources, hours budgets for individual stores, and a Foot Locker Manager Reference Guide. Plaintiff has also complied with Defendant's discovery requests as to depositions and documents. However, despite its extent, discovery has not yet been completed and notice has not been sent to putative class members. In this regard, discovery thus far does not constitute comprehensive discovery in this matter. In fact, in its Scheduling Order (Doc. No. 23), the parties requested a status conference thirty (30) days after this Court's ruling on the instant Motions to discuss, *inter alia,* dates for additional discovery. Thus, this Court is faced with a unique situation wherein extensive discovery has been undertaken, but has been limited to a cross section of the universe of discovery and has not yet closed.

As the second stage of conditional certification typically requires a "full factual record," we decline to eliminate the second stage of this two-stage process and perform the full analysis at this time. *Ingram v. Coach USA, Inc.,* 2008 U.S. Dist. LEXIS 5935, at *14–16, 2008 WL 281224, at *5 (D.N.J. Jan. 28, 2008) (analyzing the motion for conditional certification under the first stage even though depositions, affidavits, declarations and other documents had been provided); *Bishop,* 256 F.R.D. at 507 (using the first stage of the two-stage test even though discovery had progressed); *but also, Basco v. Wal–Mart, Inc.,* No. 00–3184, 2004 U.S. Dist. LEXIS 12441, at *13–14, 2004 WL 1497709, at *4–5 (E.D.La. July 2, 2004) (performing first and second stage analysis together after close to four years of related litigation, live testimony as to certification and six amendments to the Complaint). While we agree that discovery is beyond its initial stages, we do not find that enough discovery has been performed to justify a second step inquiry when the discovery up to this point represents a fraction of what would constitute full discovery in this matter. We do find, however, that due to the amount of discovery in the present matter, it is more appropriate to evaluate the conditional collective certification motion under the stronger "modest factual showing" standard. *Bishop,* 256 F.R.D. at 507.

At this first stage, "Plaintiffs must show a 'factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are similarly situated.'" *Bouder v. Prudential Fin., Inc.,* No. 06–4359, 2008 U.S. Dist LEXIS 25103, at * 7, 2008 WL 3396303 (D.N.J. March 27, 2008) (quoting *Herring v. Hewitt Assocs., Inc.,* No. 06–267, 2007 U.S. Dist. LEXIS 53278, at *3, 2007 WL 2121693, at *1 (D.N.J. July 27, 2007) (citations omitted)). The court inquires into whether "the plaintiff's proposed class consists of similarly situated employees who were collectively, 'the victims of a single decision, policy, or plan....'" *Lugo,* 2008 U.S. Dist. LEXIS 17565, at *6, 2008 WL 638237, at *3 (quoting in *Ruehl v. Viacom,* 500 F.3d 375, 388 (3d Cir.2007)). The merits of Plaintiff's claims

do not need to be evaluated at this stage in order for notice to be approved and sent out to proposed conditional collective action members; this Court evaluates only whether the Plaintiffs are similarly situated. *Lugo*, 2008 U.S. Dist. LEXIS 17565 at *9, 2008 WL 638237 at *3; *Harris*, 2007 U.S. Dist. LEXIS 55221, at *3, 2007 WL 2221411, at *1–2. It should be emphasized, however, that though the test requires a "modest factual showing," it is "nevertheless[,] an extremely lenient standard." *Parker*, 2008 U.S. Dist. LEXIS 74896, at *5, 2008 WL 4399023, at *2; *Smith*, 2003 U.S. Dist. LEXIS 21010, at *1, 2003 WL 22701017, at *1. Thus, this Court will conduct a first stage conditional certification inquiry as to whether Pereira and opt-in Plaintiffs are similarly situated with respect to the proposed class.

### Discussion

### I. Conditional Collective Certification

#### A. Plaintiff's Proposed Conditional Collective Class and Foot Locker's Alleged Policy

Plaintiff argues that the proposed class [2] is similarly situated and should consist of

All persons, who are/were employed as Retail Employees, excluding persons with the title of "Assistant Manager," with the Company; (ii) are/were not paid for all the hours worked in a given workweek; (iii) are/were not paid overtime compensation at a rate not less than one and one-half times their regular rate for each hour worked beyond forty (40) hours during a work week; and (iv) chose to opt in to this action (the "National Collective Class").

First, Plaintiff contends that he is similarly situated to the putative class because he worked from 2002 to 2005 and again from 2006 to 2008 as a non-exempt Retail Employee for Foot Locker at numerous stores under four managers. Plaintiff claims in his declaration that he was routinely required to work off-the-clock at all of his work locations un-

der multiple different managers and that his managers also regularly "shaved" his time by cutting his recorded hours worked after the fact. Williams Decl., Exh. G. Three additional opt-in Plaintiffs, who worked in the state of Illinois, also state in their declarations that they were subject to the same treatment. Williams Decl., Exhs. H–J. Plaintiff alleges that this treatment was not due to a renegade manager, but due to a Foot Locker policy that imposes strict, but insufficient labor budget on its managers, such that hours and overtime are regularly unpaid to retail employees who must work off-the-clock to perform basic job functions.

To support this FLSA class claim, Plaintiff posits that Foot Locker is centrally organized and directed by its corporate headquarters in New York, New York. Additionally, Plaintiff alleges that hours budgets are set by Foot Locker corporate and are plainly inadequate to staff the store in the pre-opening and post-closing tasks. Plaintiff contends that managers who go "over" their hours allocation were disciplined by a district manager. For instance, one letter submitted by Plaintiff from Karen Santiago, district manager, to Mike Townson, a store manager, reads, "Hours are out of control. You have been over target for the past 3 weeks and we spoke numerous times. Nothing has changed. This will not be tolerated .... Going forward, your failure to adhere to Foot Lockers policies and standards will lead to further disciplinary action up to and including termination." Williams Decl., Exh. 0. Plaintiff also contends that corporate controls the unwritten policy because a manager's pay depends, at least in part, on meeting these unrealistic hours targets. Finally, Plaintiff alleges that within Foot Locker's electronic time keeping system (SAP Campbell timekeeping system) it is impossible to punch in before pre-opening or punch out post-closing, even though there is work that specifically must be performed while the store is closed, such as vacuuming, changing

---

**2.** "Most courts, ours included, have not been methodical in their use of the terms 'class action' and 'collective action.' The result is that numerous cases about FLSA 'collective actions' use the Rule 23 term 'class action.' Here, we will quote cases that use the terms interchangeably, and we will refer to members of a 'collective action' as part of a 'class,' but we will indicate where our analysis is limited to collective actions." In *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 379, n. 3 (3d Cir.2007).

prices, cashing out, and engaging the alarm. Under the System, it is then the manager's responsibility to go back into the employee. Overall, Plaintiff argues that Foot Locker's policy of insufficient labor budgets strongly enforced by Foot Locker's management and used as a tool in compensating managers, coupled with the computer system, resulted in unpaid hours and overtime to non-exempt Foot Locker employees.

### B. Plaintiff's Factual Support

■ In support of his allegation that Foot Locker has a concerted policy, Plaintiff has submitted his own declaration of his experience at four Foot Locker stores and three additional declaration of opt-in Plaintiffs, as well as a great variety of additional documentation. First, Plaintiff points to logs from the timekeeping system that purport to show that employees' punch out times were altered by managers to coincide with the store closing. Williams Decl., Exh. VV. Second, Plaintiff has submitted records from Foot Locker's timekeeping system that, Plaintiff alleges, demonstrate that many putative class members performed thousands of sales transaction while not clocked in—demonstrating off-the-clock work. Williams Decl., Exh. F. Third, Plaintiff submitted a list of complaints filed within Foot Locker's internal system that report forced off-the-clock work and time shaving by managers to stay within the labor budget. Williams Decl., Exhs. W–UU. Fourth, Plaintiff has submitted additional individual time sheets from individual employees at various stores that, Plaintiff alleges, show that retail employees regularly punched out when the store was closed to customers, but still had to closed out registers, resulting in off-the-clock work that was never compensated. Supp. Evid. In Further Support, Exhs. A–F. Fifth, Plaintiff has provided a deposition of the Vice–President of Compensation and Human Resource Management Systems that discusses how the hours allotment was tied to bonuses and retention, as well as communications from managers citing the relationship. Williams Decl., Exh. O, Palardy Dep., 120:13–121:9. Finally, Plaintiff submitted stern letters and other documents from Foot Locker management to store managers who had gone over the hours budget. Williams Decl., Exhs. O–T. The letters, depositions as to hours requirements, internal complaints and hours budgets from stores nationwide support Plaintiff's allegation of a single policy. The declarations, time sheets, a Foot Locker manual, individual time sheets, internal complaints and communication between Foot Locker employees, provide modest evidence that the alleged unwritten policy resulted in unpaid overtime for retail employees across the country. Thus, we hold that the Plaintiff has provided sufficient evidence for conditional collective certification.

### C. Defendant Foot Locker's Arguments in Opposition

Defendant contends that Pereira and the putative class are not similarly situated in their positions and that Plaintiff has not made the requisite factual showing, but has instead, relied on mere speculation. First, Defendant argues that the putative class members have a variety of different job descriptions and work in various capacities, under different managers at locations all over the country. Thus, Foot Locker argues, the putative class members have had a variety of experiences that may contradict Plaintiff's allegations and, as such, Plaintiff is not similarly situated. To illustrate this, Defendant has provided affidavits from putative class members that directly refute Plaintiff's allegations and detail the individualized circumstances of each person as to their experience with managers. "While this evidence may be significant after discovery and during step two of the process, at this stage, it does not compel us to deny preliminary certification." *Bosley*, 2005 U.S. Dist. LEXIS 10974, at *12–13, 2005 WL 1334565, at *4. *See also Felix De Asencio*, 130 F.Supp.2d at 663 (finding that detailed declarations and other information provided by Defendant was more suitably reviewed in step two of the certification). The putative class consists of non-exempt Foot Locker employees, excluding assistant managers, who allegedly bear the same titles and duties throughout all Foot Locker stores. William Decl., Exh. K, Palardy Dep. at 38:15–40:08, 67:15–70:25. While the hours budget for each store is different

depending on its' location and sales volume, the time keeping system is uniform throughout the stores, corporate headquarters sets the hourly budget for each store and headquarters monitors any overages and communicates with managers in this regard. *See Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43 (1989) (holding that class members in various locations did not invalidate a collective action). Based on these components, Plaintiff has alleged a general policy that would have affected all non-exempt employees, regardless of their location or exact title. Thus, we will reevaluate any dissimilarities in work description in the second stage of class certification, when the impact or scope of the alleged policy is more complete. *Kuznyetsov v. West Penn Allegheny Health System*, No. 09–0379, 2009 U.S. Dist. LEXIS 47163, at *16–17, 2009 WL 1515175, at *5–6 (W.D.Pa. June 1, 2009) (citing *Sperling*, 862 F.2d at 444; *Bishop*, 256 F.R.D. at 506, *Pontius v. Delta Financial Corporation*, No. 04–1737, 2005 WL 6103189, at *3 (W.D.Pa. June 24, 2005)).

Defendant then argues that the inquiry into off-the-clock and overtime payments would be too individualized for class treatment and that Plaintiff has not identified a uniform policy, plan or scheme as required by the standard for collective certification. Specifically, Defendant contends that each assessment of off-the-clock work or unpaid overtime would be dependant on the employee him or herself, as well as the individual manager, and not reflective of any overall policy. Defendant cites to *Diaz v. Electronics Boutique of America*, No. 04–840, 2005 U.S. Dist. LEXIS 30382, at *15, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005), in support of this contention. However, in *Diaz*, the plaintiffs had allegedly only that "overtime work must be approved and, thus, [Defendant] had a policy of not paying for overtime work." *Id.* As noted by that Court, absent was any concrete assertion or detail of a uniform plan or scheme that deprived employees of overtime. *Id.* While Defendant in the instant case likens Plaintiff's allegations to those in *Diaz*, we cannot find the two comparable. Plaintiff in the instant case has specifically alleged that Foot Locker had a policy of scheduling an hours budget for each store that was inadequate for the store's work to be performed, that employees were not allowed to sign in outside store hours and that manager's pay, and potentially their jobs, were dependant upon staying within the insufficient hours budget.

Defendant also heavily relies on *Basco v. Wal–Mart Stores, Inc.*, No. 00–3184, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709 (E.D.La. July 2, 2004), another case outside of our Circuit involving similar allegations to the instant case where certification was denied. It should first be noted that, overall, the Court in *Basco* was performing a first *and* second step review of conditional certification due to completed discovery. *Id.* at 2004 U.S. Dist. LEXIS 12441, at *14, 2004 WL 1497709, at *4–5. However, in singularly assessing the first step of the collective certification inquiry, the Court did find that the evidence supplied did not support the existence of a single policy or plan because it was too individualized. However, in support of its Motion, Plaintiffs in *Basco* had offered, in total, a Customer Service Scheduling System, affidavits from the seven Plaintiffs, testimony from five employees stating that they had worked without overtime pay and a description of the bonus incentive for store managers. *Id.* at 2004 U.S. Dist. LEXIS 12441, at *18–22, 2004 WL 1497709, at *6–8. Conversely, Pereira has additionally offered an Operations manual, employee complaints of off-the-clock work from across the country, stern and direct correspondence to managers about going over the allotted hours, hours budgets for individual stores and evidence of time shaving and off-the-clock sales and cash outs from around the country. Thus, while recognizing that individual concerns may at some point be effectively raised, we find that Plaintiff has alleged and supported a cohesive policy or plan and demonstrated its alleged consequences nationwide. Defendant's claim or defense that Plaintiffs' claims are too individualized to be litigated collectively are "relevant to determination of a stage two decertification issue after discovery has closed." *Bishop*, 256 F.R.D. at 509 n. 7. *See also Gallagher v. Lackawana County*, No. 07–912, 2008 U.S. Dist. LEXIS 43722, at *28 (M.D.Pa. May 30,

2008) ("... [E]vidence offered by defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery during the step-two analysis, does not compel denial of conditional certification.").

Defendant also points mightily to its policies and procedures in place against off-the-clock work and time shaving to refute Plaintiff's allegations. However, in this initial stage, such policies are not dispositive of collective certification and this Court will not deny certification based on evidence of Defendant's official policy against such work. *Chabrier v. Wilmington Finance, Inc.,* No. 06–4176, 2006 U.S. Dist. LEXIS 90756, at *9, 2006 WL 3742774, at *3 (E.D.Pa. Dec. 13, 2006).

Finally, Foot Locker argues that the time sheets, punch data and sales time analysis proffered by Plaintiff are misleading and that Plaintiff has ignored "earnings data" that would refute Plaintiff's theory that sales were made after employees had punched out of the system. Defendant also offers several explanations for the sales being clocked after an employee had punched out.[3] While these defenses and explanations may, in fact, prove valid, we cannot find, at this stage in these proceedings, that these explanations disclaim Plaintiff's evidence of off-the-clock sales. We decline to weigh the merits of the parties' competing theories involving off-the-clock sales and cash outs at this time. *Parker,* 2008 U.S. Dist. LEXIS 74896, at *5, 2008 WL 4399023, at *2. Similarly, Defendant argues that the internal complaints of off-the-clock work or time shaving from employees throughout the county were mischaracterized by Plaintiff and do not support collective certification. In doing so, Defendant calculates the percentage of employees complaining of these issues to be a minuscule, one in 400, and next provides explanations for three of the complaints. *See* Sinatra Dec., Exhs. S, T and G. We agree that the number of examples cited by Plaintiff is small in propor-

tion to the number of Foot Locker employees; however, at this stage, twenty four complaints from around the country of the exact behaviors that Plaintiff is alleging does, in conjuncture with Plaintiff's other evidence, provide further "modest" evidence of Plaintiff being similarly situated to other putative class members.[4] We cannot discount Plaintiff's evidence of such complaints by weighing them substantively with Defendant's explanations and exploring the merits of the claim.

Overall, Defendant has provided volumes of evidence to rebut Plaintiff's claims and documentation which may prove that Defendant simply does not have the policy that Plaintiff alleges. However, while such evidence is reviewed in assessing Plaintiff's burden to establish that he is similarly situated, such evidence is more appropriately substantively weighed "pursuant to a decertification motion or a motion for summary judgment." *Harris,* 2007 U.S. Dist. LEXIS 55221, at *12, 2007 WL 2221411, at *4 (citing *Bosley* 2005 U.S. Dist. LEXIS 10974, at *12, 2005 WL 1334565, at *4). Many of Defendant's arguments and the evidence it has supplied invite this Court to wade into credibility and merit determinations of Plaintiff's claims, analyses improper for this stage in the proceedings. "Plaintiffs need only provide some 'modest' evidence beyond pure speculation that Defendant's alleged policy affected other employees." *Id.* (quoting *Smith v. Sovereign,* No. 03–2420, 2003 U.S. Dist. LEXIS 21010, at *10, 2003 WL 22701017, at *3 (E.D. Pa Nov. 13, 2003)). As such, we grant conditional certification and will revisit this certification at the second stage of the inquiry at the close of discovery.

II. *Cortes* Plaintiffs' Intervention in Plaintiff's Motion for Conditional Certification

On April 30, 2009, upon motion, this Court allowed intervention in the instant action by Plaintiffs of an action filed in the Southern

---

3. Defendant claims that Plaintiff has not accounted for: transactions linked to employees not present at the time of the transaction, non-commissioned associates crediting their sales to other associates and the payroll reconciliation period.

4. Plaintiff claims an additional three (3) complaints were filed between the original filing and the filing of the Reply Brief on March 3, 2007.

District of New York, *Cortes v. Foot Locker*, No. 06–cv–1046, due to the potential interest that *Cortes* Plaintiffs may have in the instant case as putative class members. *Cortes* Plaintiffs wished to intervene in order to object to their inclusion in the putative class. Having allowed intervention based on their perspective interest, this Court now assesses the *Cortes* Plaintiffs' request in light of the conditional certification of the FLSA claim.

■ We find that, upon conditionally certifying the putative class, it would be inappropriate for this Court to exclude the New York Plaintiffs from the now conditionally certified FLSA action. *Cortes* Plaintiffs' Certification Motion is now pending before the Southern District of New York and we decline to attempt to anticipate that Court's decision or conceivably leave New York Plaintiffs excluded from a nationwide class action as whole.[5] Despite the *Cortes* Plaintiffs' concern that their opt-in plaintiffs could ultimately be litigating their FLSA and state law claims in two fora, we cannot whole-cloth exclude all New York Plaintiffs from notice in the instant action based on possible future certification of both federal and state classes in New York. Additionally, as FLSA actions are opt-in, not opt-out, actions, it would be further attenuated to exclude them from nationwide notice based on a potential interest or harm that may come if they *affirmatively* choose to opt-in to the present action. Finally, this Court can find no precedent for such an action in conditional certifications. While the *Cortes* action was filed prior to the instant case, the first-to-file doctrine advanced by *Cortes* Plaintiffs applies in motions to dismiss, stay or transfer and does not apply here to simply exclude certain plaintiffs from a class. *Allianz Life Ins. Co. of N. Am. v. Estate of Bleich*, No. 08–668, 2008 U.S. Dist. LEXIS 90720, at *7, 2008 WL 4852683, at *3 (D.N.J. Nov. 6, 2008) (citing *Keating Fibre Intern., Inc. v. Weyerhaeuser Co.*, 416 F.Supp.2d 1048, 1052–1053 (E.D.Pa.2006) ("Consistent with these principles, the first-to-file rule gives courts the power to stay, enjoin, or transfer a later-filed case.")).

Thus, we decline to exclude *Cortes* Plaintiffs from receiving notice in this conditionally certified collective action.

### III. Form of the Notice

Plaintiff has proposed a Notice and Consent to Sue Form in its Motion for Conditional Collective Certification and has requested that this Notice be mailed to all putative plaintiffs and be posted at the Defendant's store locations. Plaintiff has proposed 120 days for putative class members to opt-in to the action. Defendant objects to the posting of the Notice in work locations, the wording in the proposed Notice, and the period of time proposed by Plaintiff. Pursuant to the district court's discretion to facilitate notice, we oversee the Notice and address the Defendant's objections in turn. *See Hoffmann–La Roche, Inc.*, 493 U.S. at 169, 110 S.Ct. 482.

Plaintiff has requested that the Notice be posted in work locations to ensure that Notice is effective; while Defendants argue that this Notice would create an undue interruption in the workplace and that Plaintiff had supplied little support for this request. Posting Notice in the workplace of the putative class members strikes this Court as an effective and efficient way to ensure that potential class members are aware of the litigation. Defendant has not detailed how a Notice in an employee section of the workplace would be disruptive to the staff and we do not find that such a Notice would be unduly disruptive. Further, outside of mailing Notice directly to the putative class members, Plaintiff has not suggested any other forms of Notice. Thus, the mailings and the posting of the Notice in a conspicuous place in an employee area of Defendant's store locations provides a balance of efficient and effective Notice dissemination. *See Sherrill v. Sutherland Global Servs., Inc.*, 487 F.Supp.2d 344, 351 (W.D.N.Y.2007) (finding posting and mailings of opt-in notices and forms to be appropriate).

Additionally, Plaintiff has requested a 120–day time period for putative class members

---

5. One of many possible scenarios would include a denial of conditional certification of the *Cortes* class by the New York court, leaving New York plaintiffs excluded from the present action and, conceivably, a party to no other action.

to opt-in to the present action, while Defendant finds this period unreasonable and suggests a 30–40 day period. We find that, in light of the potential size of the putative class and the number of persons to be contacted, a 90–day period is reasonable. This time period will allow potential class members to review the Notice and, if they so choose, to file a Consent To Sue form and opt-in to the action.

Finally, parties make a variety of arguments as to the exact wording that should be used in the Notice itself. In some instances, the parties have demonstrated a willingness to amend the proposed Notice to assuage the opposing party's concerns. Accordingly, we direct the parties to meet and confer as to the wording and form of the Notice and present a joint, proposed Notice to this Court within thirty (30) days of entry date of the Order.

## IV. Inherent Incompatibility: Federal and State Law claims

Plaintiff has simultaneously moved for FLSA collective action and class action certification pursuant to Fed. R. Civ. P. 23, creating a potential conflict and implicating the question of whether this Court should exercise supplemental jurisdiction over the state law claims. While neither party has addressed the potential incompatibility of the these Motions in their respective briefs, we feel compelled to address it at this juncture. Thus, we address the issue *sua sponte* based on the jurisdictional ability of the simultaneous "classes" to move forward together as brought squarely to this Court on the dual-Motions for certification.

The incompatibility of federal and state parallel class actions has been raised numerous times by district courts in our Circuit, but the issue, in the instant carnation, has never been addressed squarely by the Third Circuit. However, the Third Circuit has provided direction in a related case where state law class claims were brought under supplemental jurisdiction. In its holding in *De Asencio*, an off-the-clock hours case somewhat factually similar to the present one, the Third Circuit held that due to the complexities of the state law claims under the Pennsylvania Wage Payment and Collection Act and the large disparities in the number of state plaintiffs to federal ones, the state law claims predominated over the federal claims and, pursuant to Section 1367(c)(2), dismissed the state law claims. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir.2003).

While *De Asencio* provides direction, it does not address the question now before this Court. In the instant case, the federal and state law claims greatly overlap and Plaintiff has requested certification of both "classes" simultaneously. Both the federal and state claims involve the same factual allegations and would appear to necessitate the same discovery, testimony, witnesses and similar analysis by the court. *See Hickton v. Enter. Rent–A–Car Co.*, No. 07–1687, 2008 U.S. Dist. LEXIS 86604, at *9, 2008 WL 4279818, at *3 (W.D.Pa. Sept. 12, 2008). Unlike the claims in *De Asencio*, the state law claims here are not, on their face, more overtly complex than the federal ones and, at this stage, would appear to require a similar amount of proof and testimony. Additionally, the putative class proposed herein is potentially much larger than the statewide class. Thus, the predomination concerns identified in *De Asencio* are not, at this time, present in the instant case. The procedural posture of the claims in *De Asencio* was also distinct, in that the Court in *De Asencio* had already granted conditional certification and was concerned that the Plaintiffs were moving for class certification to use the state law class opt-out action as a "second line of attack" when the federal claims "yielded a smaller than desired federal class." *Id.* at 312. However, in the instant case, the Court is faced with certification of both the federal and state claims simultaneously. Hence, though Plaintiff has pled the state law claims pursuant to supplemental jurisdiction, this Court is faced with an "inherent incompatibility" issue as to the simultaneous certification motions, as opposed to the distinct predominance problem articulated in *De Asencio*.[6]

---

6. Plaintiff has not averred in his Complaint that original jurisdiction exists over the state law claims and has asserted jurisdiction for its state law claims under supplemental jurisdiction pur-

Since *De Asencio*, district courts in this Circuit have struggled to ascertain whether, in parallel actions where the state claims do not predominate over the federal ones, the court should maintain jurisdiction over both claims or dismiss the state law claims due to the possibility of inherent incompatibility between opt-in and opt-out classes. *See Woodard v. Fedex Freight East, Inc.*, 250 F.R.D. 178 (M.D.Pa.2008) (finding that it could not exercise jurisdiction over federal and state claims due to inherent incompatibility in opt-in and opt-out classes); *Burkhart–Deal v. Citifinancial, Inc.*, No. 07–1747, 2008 U.S. Dist. LEXIS 44469, at *6–10, 2008 WL 2357735, at *2 (W.D.Pa. June 5, 2008) (agreeing with the Court in *Ellis* and finding that opt-in and opt-out actions are incompatible); *Ellis v. Edward D. Jones & Co.*, 527 F.Supp.2d 439, 448 (W.D.Pa.2007) (finding, in its second case of this kind, that the class procedures set out in the FLSA were incompatible with the procedures in Fed.R.Civ.P. 23); *Brothers v. Portage Nat'l Bank*, No. 06–94, 2007 U.S. Dist. LEXIS 24326, at *23, 2007 WL 965835, at *7 (W.D.Pa. March 29, 2007) (same); *Otto v. Pocono Health System*, 457 F.Supp.2d 522, 524 n. 1 (M.D.Pa.2006) (holding that overlapping federal and state claims would defeat Congressional intent); *Herring v. Hewitt Assocs.*, No. 06–267, 2006 U.S. Dist. LEXIS 56189, at *5, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006) (holding the opt-in and opt-out notice schemes incompatible); *Himmelman v. Cont'l Cas. Co.*, No. 06–166, 2006 U.S. Dist. LEXIS 56187, at *5, 2006 WL 2347873, at *1 (D.N.J. Aug. 11, 2006) (same); *Aquilino v. Home Depot U.S.A.*, No. 04–4100, 2006 U.S. Dist. LEXIS 48554, at *11–12, 2006 WL 2023539, at *3–4

(D.N.J. July 17, 2006) (holding that Congress's intent in establishing the opt-in scheme for FLSA cases would be defeated by allowing the dual-classes to proceed).[7,8] As has been aptly laid out by these courts, the incompatibility emanates from Congress's intent for FLSA actions to require plaintiffs to opt-in to the collective action, thereby seeking to "limit private FLSA claims to those affirmatively asserted by affected employees 'in their own right,' and to 'free[ ] employers of the burden of representative actions.'" *Ellis*, 527 F.Supp.2d at 451 (quoting *Hoffmann–La Roche*, 493 U.S. at 173, 110 S.Ct. 482). Allowing a Rule 23 opt-out action to proceed simultaneously in the same lawsuit would allow plaintiffs to "circumvent" the requirement of the FLSA action by bringing other, unnamed Plaintiffs into the lawsuit. *Ellis*, 527 F.Supp.2d at 451–52 (citing *Otto*, 457 F.Supp.2d at 523) (internal quotations omitted). This Court has previously addressed the issue in another case involving FLSA claims and Pennsylvania labor claims, holding that "FLSA collective actions are inherently incompatible with Rule 23 state-law class actions, and thus cannot be brought simultaneously in federal court under one lawsuit." *Ramsey v. Ryan Beck*, No. 07–1747, 2007 U.S. Dist. LEXIS 56129, at *12, 2007 WL 2234567, at *3–4 (E.D.Pa. Aug. 2, 2007) (Joyner, J.). While the facts and allegations in the present case are distinct from those in *Ramsey*, we find that the incompatibility between the opt-in and opt-out class rubrics remain and that "permitting a FLSA collective action to be litigated with a Rule 23 state-law class action would 'nullify Congress's intent in crafting [FLSA] § 216(b) and eviscerate the purpose of § 216(b)'s opt-

---

suant to 28 U.S.C. § 1367 *only*. As the reasons laid out in *De Asencio* for denying supplemental jurisdiction pursuant to § 1367(c)(2) are not present here, this Court moved to additional jurisdictional analysis.

7. But *see, Hickton v. Enterprise Rent–A–Car Co.*, No. 07–1687, 2008 U.S. Dist. LEXIS 86604, at *19–22, 2008 WL 4279818, at *6–7 (W.D.Pa. Sept. 12, 2008) (allowing federal and state class claims to move forward despite opt-in/opt-out compatibility concerns). It should be noted that while the court in *Hickton* allowed a lawsuit involving federal and state class claims to proceed, the state claims in that matter were alleged to have jurisdiction in federal court pursuant to

CAFA *and* supplemental jurisdiction. That court explicitly held that, "[i]n the event that it is later determined that the court does not have original jurisdiction under CAFA of th[e state] claim, the court would decline to exercise supplemental jurisdiction and the claim would be dismissed, without prejudice."

8. This Court acknowledges that district courts outside of the Third Circuit do hold, in certain instances, that the two schemes do not conflict with each other and instead preserve judicial economy. *See, e.g., Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y.2001).

in requirement.'" *Id.* at 2007 U.S. Dist. LEXIS 56129, at *6, 2007 WL 2234567, at *2 (quoting *Otto,* 457 F.Supp.2d at 524 n. 1). Thus, Plaintiff's state law claims cannot proceed in so far as they overlap with their FLSA claims.

However, as the parties have not raised the issue in their present Motions, it is unclear from the face of the Complaint whether there are any state claims that are wholly distinct from federal claims. If such a state claim exists, it could conceivably go forward with the FLSA collective action. *Woodard,* 250 F.R.D. at 189 ("Where the state law claim is brought to vindicate rights enjoying no similar protection under the FLSA, the FLSA is not implicated."); *Brothers,* 2007 U.S. Dist. LEXIS 24326, at *18–19, 2007 WL 965835, at *6 (finding that "Rule 23 and § 216(b) are only incompatible to the extent that Plaintiff's state-law claims coincide with the FLSA action" and allowing plaintiff to pursue an opt-out class for a claim not covered under FLSA as long as such claims did not predominate over the federal claims). At this stage in the lawsuit and without briefing from the parties, it would be premature for the Court to automatically separate all the claims in the Complaint and dismiss the state law claims as inherently incompatible because there may be a state law claim that is distinct from the FLSA counterpart. Thus, this Court will revisit the Pennsylvania claims at the Motion to Dismiss stage in order to allow sufficient investigation and briefing as to distinct state claims that could proceed. However, as the instant Motion for Class Certification pursuant to Fed.R.Civ.P. 23 seeks to certify the Pennsylvania class for state claims that, at least to a certain extent, overlap with the federal FLSA claims, we dismiss the motion without prejudice to Plaintiff's right to refile once the extent of the incompatibility due to overlap becomes clear.

An appropriate Order follows.

## ORDER

AND NOW, this 11th day of September, 2009, upon consideration of the Plaintiff's Motion for Conditional Collective Certification pursuant to 29 U.S.C. § 216(b) (Doc. No. 53), Plaintiff's Motion for Class Action Certification pursuant to Fed. R.C.P. 23 (Doc. No. 50), Defendant's Response in Opposition (Doc. No. 66), Plaintiff's Reply (Doc. No. 85), Defendant's Surreply (Doc. No. 89), Plaintiff's Rebuttal Memorandum (Doc. No. 93), Plaintiff's Notice of Filing Supplemental Evidence (Doc. No. 100) and Defendant's Response to Plaintiff's Second Notice of Filing Supplemental Evidence (Doc. No. 103), and for the reasons set forth in the attached Memorandum, it is hereby ORDERED that Plaintiff's Motion for Conditional Collective Certification pursuant to 29 U.S.C. § 216(b) is GRANTED and Plaintiff's Motion for Class Action Certification pursuant to Fed. R.Civ.P. 23 is DENIED without prejudice. It is further ORDERED as follows:

1. Plaintiff's FLSA claims SHALL proceed as conditionally certified collective action, under 29 U.S.C. § 216(b), on behalf of all persons who were, or are employed by Defendant throughout the United States as nonexempt employees, including Sales Associates, Stock Persons and Cashiers, but excluding Assistant Managers (collectively "Retail Employees") at any time from the date three (3) years prior to the mailing date of the Notice to the present.

2. Defendant SHALL produce to Plaintiff's counsel an electronic list, in Microsoft Excel if possible, of names and last known addresses of all persons described above within thirty (30) days of the entry date of this Order. Defendant SHALL further produce to Plaintiff's counsel within seven (7) days of any request by Plaintiff's counsel all telephone numbers Defendant might have (if any) for any person described above in the collective action whose FLSA Notice is returned by the Post Office as undeliverable.[9]

3. Parties SHALL meet and confer as to the proposed wording and form of the Notice and SHALL present a joint, proposed Notice to this Court within thirty (30) days of the entry date of this Order.

---

9. Use and possession of the information provided by Defendant shall be used solely for the purpose of providing notice of this action to persons entitled to file Plaintiff Consent to Sue Forms.

4. Following approval of Notice by this Court, Defendant shall post a copy of the approved FLSA Notice in each of its retail locations in an employee area in a conspicuous place for its Retail Employees to view.

5. In order to be considered timely filed, the Consent to Sue Form must be received and filed with this Court no later than ninety (90) days after the date on which the FLSA Notice is mailed by Plaintiff's counsel.